# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
June 18, 2019

Lyle W. Cayce
Clerk

No. 18-50058

UNITED STATES OF AMERICA,

    Plaintiff - Appellee

v.

ANDREW MAXWELL PARKER,

    Defendant - Appellant

Appeals from the United States District Court
for the Western District of Texas

Before HAYNES, GRAVES, and HO, Circuit Judges.

HAYNES, Circuit Judge:

Andrew Parker was convicted of an assortment of fraud crimes more than a decade ago. Since then, he has revisited our court at least ten times through a combination of a direct appeal, appeals from 28 U.S.C. § 2255 denials, requests for authorization to file successive § 2255 motions, and a petition for writ of mandamus. Though the procedural vehicles have changed, his arguments have not, and we have repeatedly denied his requests for certificates of appealability (COA) and authorization to file successive § 2255 motions.

Parker once again tried his luck with these arguments before the district court, filing another motion under § 2255. The district court dismissed the

motion for lack of jurisdiction because Parker failed to receive authorization from our court to file a successive petition under § 2255. Parker then requested reconsideration, which the district court denied. He has now appealed, implicitly requesting a COA. We DENY Parker a COA, DISMISS his appeal for lack of jurisdiction, and sanction him for appealing his collateral attack on his conviction.

But Parker has also appealed a new issue not foreclosed by his prior efforts. In the district court, he challenged the amount of restitution he was ordered to pay. Parker argues that the victims of his crimes have recovered some of their damages through a civil judgment. The statutes governing restitution grant Parker the right to reduce his restitution order based on subsequent civil judgments. But Parker failed to present necessary evidence to succeed on his claim. We thus AFFIRM the district court's denial of his request to quash the Government's writ of execution.[1]

## I.  Background

Andrew Parker used his company, San Antonio Trade Group, Inc. ("SATG"), to defraud the Export-Import Bank of the United States ("Ex-Im Bank"). He collaborated with people in Mexico to seek loans from United States companies based on lies and forged documents. Ex-Im Bank insured and guaranteed the loans. Once the loans were insured and guaranteed, Parker diverted millions of dollars in loan money to himself rather than for the stated purposes. Along the way, he committed wire fraud, money laundering, tax evasion, tax fraud, and conspiracy.

Eventually Parker was caught and pleaded guilty to those crimes under a written plea agreement. In accordance with the plea agreement, the district

---

[1] Parker's motion to determine jurisdiction in advance of appellate briefing is denied as moot.

No. 18-50058

court sentenced Parker to a term of imprisonment and supervised release and ordered Parker to pay $10 million in restitution.

Since then, Parker has doggedly tried to undo his conviction. Parker's first attack on his plea agreement and conviction came when he appealed his conviction. *See United States v. Parker*, 372 F. App'x 558 (5th Cir. 2010) (per curiam). He argued that the indictment, plea agreement, and plea colloquy did not set out facts that proved he committed some of the alleged crimes. *Id.* at 560–62. We rejected his arguments and affirmed. *Id.* at 563.

Less than a year later, Parker filed his first § 2255 motion in April 2011. His arguments ranged wide, including many related to the arguments he makes in this appeal: the Government committed a *Brady*[2] violation or elicited or permitted false evidence, and his counsel was ineffective by failing to challenge the wire fraud counts for lack of an interstate nexus. The district court identified and rejected those arguments.[3] Parker sought reconsideration, which was also denied. We denied Parker a COA, concluding that all reasonable jurists would agree that the district court's order was correct.

Between that motion and the motions leading to this appeal, Parker filed numerous other motions in the district court. The district court rejected all those motions on the grounds that they were unauthorized successive motions, *see* § 2255(h) (requiring a defendant who files a "second or successive motion" to receive authorization to file it from the proper court of appeals in accordance with § 2244), or, to the extent they were not, they were barred by § 2255's one-

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

[3] The district court did accept Parker's argument, with which the Government agreed, that his term of supervised release exceeded the statutory maximum. It amended his judgment to reflect the statutory maximum. Though Parker appealed the amended judgment that incorporated this change, we stated that his arguments attacked the denial of the § 2255 order; we concluded the appeal from the amended judgment should be dismissed for lack of a COA and indicated Parker could seek one in the other appeal he had then filed.

No. 18-50058

year period of limitations, *see* § 2255(f).  Each time Parker appealed the district court's order, and each time we denied him a COA.  The most recent time we addressed one of Parker's appeals, a judge of this court imposed sanctions on him for filing frivolous appeals.

While he filed district court motions, Parker also twice requested that our court grant him authorization to file a successive motion.  We denied authorization both times—once because Parker had not identified an exception to the successive motion bar, *see In re Parker*, 575 F. App'x 415 (5th Cir. 2014), and another time because the evidence he pointed to did not satisfy the "newly discovered evidence" exception to that bar.

In all, we have addressed Parker's case eight times: one affirmance on direct appeal, five denials of COAs, and two denials of requests for authorization to file a successive motion.[4]

Undeterred, Parker tried again.  After each of his previous attempts failed, Parker filed another motion under § 2255.  The district court again dismissed the motion as an unauthorized successive motion.  Parker then requested reconsideration, which was denied.  He then requested reconsideration of the district court's denial of reconsideration.  The district court again denied reconsideration.  Parker appealed from the order denying reconsideration of the order denying reconsideration of the § 2255 motion, which we now call the Order Denying Reconsideration of Reconsideration of § 2255.

---

[4] We have also dismissed another appeal for failure to prosecute and denied a recently filed petition for writ of mandamus that covered the same district court actions that are now the subject of this appeal.

No. 18-50058

While he re-pressed his § 2255 motion, Parker also filed a new type of motion. Parker, now released from prison,[5] moved to quash the Government's writ of execution used to enforce the restitution order against him. Though the type of motion was new, the arguments mostly were not. They largely followed the exact same arguments made in Parker's previously rejected § 2255 proceedings.

Parker did, however, make one new argument specific to the motion to quash. He argued that the Government had collected money that had not been credited against the restitution order. The district court held a hearing on the motion to quash and permitted Parker to present evidence in support of his arguments. Parker presented evidence only about his argument that the district court lacked jurisdiction over him because there was no interstate wire transfer. He did not present any evidence that the Government had collected money on his restitution order. Less than two weeks after the hearing, the district court denied Parker's motion to quash.

Parker moved for reconsideration and later filed a supplement to the motion. The supplement focused heavily on his new argument, particularly that Ex-Im Bank had already recovered money that should be credited against his restitution. It identified an affidavit submitted with one of his previous § 2255 motions that stated that Ex-Im Bank had collected money from entities related to his scheme. The district court denied the motion for reconsideration and its supplement, orders which we collectively call the Orders Denying Quash Reconsideration. Parker appealed the Orders Denying Quash Reconsideration, which we consolidated with his other appeal.

---

[5] Parker is still on supervised release, so he is still "in custody" for purposes of § 2255. *See United States v. Scruggs*, 691 F.3d 660, 662 n.1 (5th Cir. 2012).

No. 18-50058

## II.   Discussion

### A. Collateral Attack on Conviction

We begin by dismissing for lack of jurisdiction Parker's appeals to the extent they challenge his previous conviction.  Those aspects of his motions should be treated as motions for relief under § 2255, regardless of what they are titled.  *See Gonzalez v. Crosby*, 545 U.S. 524, 530 (2005); *United States v. Hernandes*, 708 F.3d 680, 681–82 (5th Cir. 2013).  When a defendant appeals such orders, he must first receive a COA.  *See* 28 U.S.C. § 2253(c)(1)(B).  The absence of a COA deprives this court of jurisdiction to address the merits of those arguments.  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("[U]ntil a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners.").  To receive a COA, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* (brackets and internal quotation marks omitted) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Reasonable jurists would all agree that the district court lacked jurisdiction because Parker had not received authorization to file a successive § 2255 motion.  Parker previously requested, and was denied, authorization to file a successive § 2255 motion making the same arguments he made below and now makes on appeal.  *See In re Parker*, No. 14-50911 (5th Cir. Nov. 10, 2014).  In denying the motion for authorization, we concluded that "[a]ll of Parker's complaints involve matters that could have and should have been asserted on direct appeal or on appeal from the denial of the initial § 2255 motion." *Id.*  We also concluded that he had not presented new evidence or established an actual innocence exception to the successive § 2255 bar.  *See id.*  Despite our denying authorization, Parker filed his motion anyway.  The

district court was therefore correct to deny Parker's § 2255 motion for want of jurisdiction. *See* 28 U.S.C. § 2255(h); *Crone v. Cockrell*, 324 F.3d 833, 836–38 (5th Cir. 2003) (holding that a district court lacks jurisdiction to address a successive motion without authorization from the court of appeals).

We have previously sanctioned Parker in the amount of $100 for pursuing frivolous litigation in our court. Because that has not dissuaded him from further frivolous filings, we again sanction him. It is ORDERED that Parker pay $1,000 to the Clerk of this court, and he is BARRED from filing in this court or in any court subject to this court's jurisdiction any challenge to his conviction or sentence until the sanction is paid in full unless he first obtains leave of the court in which he seeks to file such a challenge. Parker is WARNED again that filing any future frivolous, repetitive, or otherwise abusive challenges to his conviction or sentence in this court or any court subject to this court's jurisdiction will subject him to additional and progressively more severe sanctions.

## B. Attack on Restitution Amount

Parker also appeals the district court's denial of his request to quash a writ of execution against his property to collect the restitution he owes. He argues two different theories for why he does not owe the restitution ordered. We first assure ourselves of jurisdiction to address the restitution aspects of his appeal and then explain why the district court did not err in rejecting both theories.

### 1. Jurisdiction

Parker asserts that we have jurisdiction over the district court's denial of his writ of execution because it is an appeal from a "final decision[]" under 28 U.S.C. § 1291. We have previously said it is "close question" whether a defendant can appeal the denial of a motion to quash a writ of execution under

No. 18-50058

§ 1291. *See United States v. King*, 123 F. App'x 144, 146 n.1 (5th Cir. 2004) (per curiam). We now hold that such a denial is a final decision.

In prior times, we said that "the refusal to quash an execution is not a final judgment." *Noojin v. United States*, 164 F. 692, 693 (5th Cir. 1908) (per curiam) (citing, inter alia, *Loeber v. Schrader*, 149 U.S. 580, 585 (1893)). Other circuits have said the same thing. *See United States v. Moore*, 878 F.2d 331 (9th Cir. 1989) (per curiam); *United States v. Stangland*, 270 F.2d 893, 894 (7th Cir. 1959). But those cases were all decided prior to the Federal Debt Collection Procedures Act of 1990, when the Government would have had to execute judgment in accordance with state law. *See* Seth S. Katz, *Federal Debt Collection Under the Federal Debt Collection Procedures Act: The Preemption of State Real Estate Laws*, 46 EMORY L.J. 1697, 1699 (1997). Obviously, those cases could not and did not decide the question of whether writs of execution issued under the Federal Debt Collection Procedures Act of 1990 are final orders.[6] *See Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) (explaining that the rule of orderliness prevents altering prior precedent of our court "absent an intervening change in the law"). Given the change in the law evinced by the new statutory scheme as discussed below and

---

[6] Even if the order in this case was not a "final decision" under § 1291, we would then conclude it is an appealable interlocutory order under 28 U.S.C. § 1292(a)(1). That provision grants appellate jurisdiction over "[i]nterlocutory orders . . . granting, continuing, modifying, refusing, or dissolving injunctions, or refusing to dissolve or modify injunctions." Though the order granting the writ of execution was not labeled an injunction, that does not matter. We have said that an order that "has 'the practical effect' of granting or denying an injunction" may be appealed under § 1292(a)(1). *See United States v. Real Prop. Located at 1407 N. Collins St.*, 901 F.3d 268, 272 (5th Cir. 2018) (quoting *Abbott v. Perez*, 138 S. Ct. 2305, 2319–20 (2018)). We have found jurisdiction over other interlocutory orders that have a similar, less burdensome effect on property seized by the Government. *See 1407 N. Collins St.*, 901 F.3d at 271–73. Thus, in the alternative, we conclude the orders in this case are similarly appealable under § 1292(a)(1).

No. 18-50058

considering the posture of Parker's case, we conclude that the order denying Parker's motion to quash the writ of execution is a final decision under § 1291.

A final decision is typically one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Hall v. Hall*, 138 S. Ct. 1118, 1123–24 (2018) (quoting *Ray Haluch Gravel Co. v. Cent. Pension Fund of Operating Eng'rs and Participating Emp'rs*, 571 U.S. 177, 183 (2014)). Parker's motion to quash the writ of execution of the judgment, though, is litigation over the execution of the judgment. Courts generally view such post-judgment motions "as a separate lawsuit from the action which produced the underlying judgment. Consequently, the requirements of finality must be met without reference to that underlying judgment." *In re Joint E. & S. Dists. Asbestos Litig.*, 22 F.3d 755, 760 (7th Cir. 1994); *see also Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 131 (5th Cir. 1983) (concluding that a post-judgment order awarding costs was not final until the amount of costs was fixed). The dispositive question, then, is whether there is anything left for the district court to do with respect to execution of the judgment after denial of Parker's motion.

There is not. Under the Federal Debt Collection Procedures Act of 1990, Pub. L. No. 101–647, 104 Stat 4789 (1990), the Government can collect on judgments in its favor through, among other things, a writ of execution. *See* 28 U.S.C. § 3203. The writ of execution allows a United States marshal to "levy"[7] the defendant's property to satisfy the judgment. *See* 28 U.S.C. § 3203(d) (specifying that writs of execution are levied under the same procedures as those for writs of attachment in 28 U.S.C. § 3102(d)); *id.* § 3102(d)(1) (authorizing the marshal to levy property). Once levied, the

---

[7] "Levy" generally means to "take or seize property in execution of a judgment." *Levy*, BLACK'S LAW DICTIONARY (10th ed. 2014).

property becomes the Government's to sell to satisfy the defendant's judgment. *See* 28 U.S.C. § 3203(g). Every writ of execution directs the marshal to not only levy but also to sell the property, subject to a few irrelevant exceptions. *See* 28 U.S.C. § 3203(c)(2)(B). The marshal may continue to use the same writ of execution to levy property until the judgment is satisfied. *See* 28 U.S.C. § 3203(h)(2). Thus, once a district court has issued a writ of execution, all that remains is for a non-judicial officer to take and dispose of the defendant's property. The statutes do not grant Parker a right to challenge the writ of execution at any later point, and there is nothing left to be done after execution is complete. The district court's order is thus final, as two other circuits have concluded about similar orders. *See United States v. Peters*, 783 F.3d 1361, 1363 (11th Cir. 2015) (per curiam) (concluding that an order denying a defendant's request to transfer to another court and granting the government's application for a writ of execution was a final, appealable order); *United States v. Furkin*, 165 F.3d 33 (7th Cir. 1998) (unpublished table decision) (holding that the court had jurisdiction over the district court's approval of writs of execution).

### 2. Merits

Parker makes two arguments about the merits of his restitution order, neither of which succeed. Parker first argues that the restitution amount was incorrect the day it was ordered.[8] But we have denied numerous attempts to collaterally attack a restitution order.[9] That is because once orders become

---

[8] Parker's argument about the amount of restitution is not subject to the rules of § 2255 because we have previously concluded that "complaints concerning restitution may not be addressed in § 2255 proceedings." *United States v. Hatten*, 167 F.3d 884, 887 (5th Cir. 1999) (noting that § 2255 challenges are limited to unlawful custody, not imposition of monetary penalties).

[9] *See, e.g., United States v. Goyette*, 446 F. App'x 718, 720–21 (5th Cir. 2011) (per curiam) (concluding that a defendant "cannot use this garnishment proceeding to collaterally attack the amount of restitution ordered in his criminal case"); *United States v. Miller*, 599

final on direct review, "they became res judicata . . . , 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009) (quoting *Nevada v. United States*, 463 U.S. 110, 130 (1983)). Parker's first argument thus fails.

His second argument also fails but for a different reason. On appeal, Parker argues that Ex-Im Bank "had collected notes and civil judgments for the total loss for the victims named in his plea agreement."[10] We agree that if this statement were proved to be true, Parker would have a valid argument. The statute governing Parker's restitution states that his restitution amount "shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in—(A) any Federal civil proceeding; and (B) any State civil proceeding, to the extent provided by the law of the State." 18 U.S.C. § 3664(j)(2). The use of the words "reduced" and "later recovered" indicates that Parker can make the argument as it applies to judgments recovered after the restitution order is final. So, unlike the collateral attack on the restitution

---

F.3d 484, 490 (5th Cir. 2010) (assuming that, if the writ of *audita querela* survives in criminal proceedings, it only applies to a restitution order that, "though correct when rendered, has since become infirm"); *Patel v. Mukasey*, 526 F.3d 800, 804 (5th Cir. 2008) (concluding a defendant "cannot now collaterally attack the validity of his restitution order" because "whether there was an actual loss sufficient to justify an order of restitution under 18 U.S.C. § 3664 is an issue that should have been raised and argued before the sentencing court"). The fact that Parker frames one of his arguments as an issue of subject matter jurisdiction does not matter. *See Kontrick v. Ryan*, 540 U.S. 443, 455 & n.9 (2004) (noting that, although a litigant may raise an issue of subject matter jurisdiction at any time, "[e]ven subject-matter jurisdiction . . . may not be attacked collaterally").

[10] Parker argued below that he should receive credit against his restitution order for other post-judgment developments, like restitution payments by a co-conspirator. He has not briefed any of those issues on appeal. "Failure to brief an issue on appeal constitutes waiver." *Lara v. Johnson*, 141 F.3d 239, 242 n.3 (5th Cir.), *reh'g granted, opinion modified*, 149 F.3d 1226 (5th Cir. 1998).

order's calculations at the time of sentencing, Parker was permitted to make this argument post-judgment because, practically speaking, that is the only time he could have made that argument concerning payments allegedly made after the judgment was entered.[11]

But even considering all the evidence Parker presented below,[12] Parker does not meet the evidentiary requirements of § 3664(j)(2). We have held that the defendant bears the burden of proving an offset under § 3664(j)(2). *See United States v. Sheinbaum*, 136 F.3d 443, 449 (5th Cir. 1998). That burden includes proving the value of any alleged offset. *Id.* at 449–50. Parker never identified to the district court the amount that Ex-Im Bank allegedly recovered after the entry of his restitution order. His argument thus failed on that ground.

## III.   Conclusion

We DENY Parker a COA to appeal the district court's dismissal of his challenges to his conviction. He is ORDERED to pay $1,000 to the Clerk of this court, and he is BARRED from filing in this court or in any court subject to this court's jurisdiction any challenge to his conviction or sentence until the sanction is paid in full unless he first obtains leave of the court in which he seeks to file such challenge. Parker is WARNED again that filing any future frivolous, repetitive, or otherwise abusive challenges to his conviction or

---

[11] We assume without deciding that the vehicle through which he made this argument—a motion to quash a writ of execution—was a proper vehicle.

[12] As noted above, Parker moved to quash the writ of execution. When it was denied, he moved for reconsideration of the motion, this time including more evidence in support of his argument. He appealed only the denial of reconsideration. We need not decide what legal standards would have governed the motion for reconsideration below or on appeal because even if we consider all the evidence under a de novo standard of review, he still fails to make out a claim.

12

No. 18-50058

sentence in this court or any court subject to this court's jurisdiction will subject him to additional and progressively more severe sanctions.

We AFFIRM the district court's Orders Denying Quash Reconsideration.